# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | No. 14-CR-110-LRR |
| vs. | ‖ | **ORDER** |
| DONALD RICHARD CRANE, | ‖ | |
| Defendant. | ‖ | |

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1*
*II.  RELEVANT PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . 2*
*III. STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . 2*
*IV.  RELEVANT FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . 3*
*V.   ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5*
    *A. Search of Defendant's Vehicle. . . . . . . . . . . . . . . . . . . 5*
        *1.  Inventory search. . . . . . . . . . . . . . . . . . . . . . . . 5*
        *2.  Search incident to arrest. . . . . . . . . . . . . . . . . . . 7*
    *B. Defendant's Statements. . . . . . . . . . . . . . . . . . . . . . 8*
        *1.  Statements to jailer. . . . . . . . . . . . . . . . . . . . . . 8*
        *2.  Statements to Deputy VanBennekom. . . . . . . . . . . . . . . . 9*
*VI.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11*

## *I. INTRODUCTION*

The matter before the court is Defendant Donald Richard Crane's Objections (docket no. 43) to United States Chief Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 41), which recommends that the court deny Defendant's Motion to Suppress ("Motion") (docket no. 26).

## II. RELEVANT PROCEDURAL BACKGROUND

On October 30, 2014, the grand jury returned an Indictment (docket no. 2) charging Defendant with knowingly possessing a firearm after having been convicted of a crime punishable by imprisonment for a term of more than one year in violation of 18 U.S.C. § 922(g)(1). On December 3, 2014, Defendant filed the Motion. On December 12, 2014, the government filed a Resistance (docket no. 33). On December 16, 2014, Judge Scoles held a hearing on the Motion. *See* December 16, 2014 Minute Entry (docket no. 34). Defendant appeared in court with his attorney Mark Meyer. Special Assistant United States Attorney Ravi Narayan represented the government. On December 31, 2014, Judge Scoles issued his Report and Recommendation, which recommends that the court deny the Motion. On January 14, 2015, Defendant filed his Objections. On January 21, 2015, the government filed a Response to the Objections (docket no. 46). The Report and Recommendation and the Objections are fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error

for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND[1]

On the morning of August 5, 2014, the Iowa County Sheriff's dispatcher received a 911 call reporting an intoxicated driver at a Casey's store near Interstate 80. The caller stated that when she went to investigate, she found that the driver was passed out in the grass behind the vehicle and the vehicle contained numerous beer bottles. The caller stated that she tried to wake the driver and he got up and basically crawled to the vehicle. Iowa County Deputy Sheriff Douglas VanBennekom arrived at the Casey's convenience store near where the reportedly intoxicated driver was located and he observed a vehicle in the parking lot that matched the description given by the 911 caller.

Deputy Vanbennekom approached the vehicle and saw the driver sitting behind the steering wheel with no other persons in the vehicle. The driver appeared to Deputy Vanbennekom to be sleeping, so Deputy VanBennekom approached the vehicle and knocked on the driver's side door. The driver did not respond, so Deputy VanBennekom and opened the door to check on the driver's welfare. The driver was later determined to be Defendant. Deputy VanBennekom asked Defendant several questions, and Defendant appeared to state that he did not have a valid driver's license and admitted that he drove. On the way to placing Defendant in the back of the patrol car, Deputy VanBennekom patted down Defendant. Deputy VanBennekom asked Defendant if his vehicle registration was in Defendant's glove compartment, and Defendant stated that it was. Trooper

---

[1] After reviewing the hearing transcript, the court finds that Judge Scoles accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 2-9. Accordingly, the court only briefly summarizes the facts. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

Jonathan Degen of the Iowa State Patrol searched through the glove compartment for about two and a half minutes, at which point he appeared to bring documents back to the patrol car. Dispatch informed the officers that Defendant was barred from driving and had convictions for driving while suspended, among other things. Trooper Degen returned to the passenger side of the vehicle and searched the vehicle for several additional minutes.

The officers administered a sobriety test, which Defendant did not pass. After some additional questioning, the officers performed an inventory of the vehicle's contents and discovered a firearm in the console. The officers advised Defendant that they were planning to tow the vehicle, but handed Defendant a phone with which to call Defendant's wife. Defendant appeared to leave a message on the answering machine. Deputy VanBennekom transported Defendant to the Iowa County jail while Trooper Degen inventoried the vehicle's contents and had the vehicle towed.

At the jail, Jimmy Roberts, a jailer at the Iowa County Jail, entered Defendant's jail cell to ask if he was okay. Roberts testified that Defendant volunteered incriminating information.

On the morning of August 6, 2014, Deputy VanBennekom met Defendant in the lobby of the jail, and Defendant requested to make a phone call to obtain a ride home. Defendant accompanied Deputy VanBennekom back to an interview room, where Deputy VanBennekom informed Defendant that he was not in custody and could leave at any time without answering questions. Deputy VanBennekom read Defendant his *Miranda* rights and Defendant made incriminating statements.

## V. ANALYSIS

In the Objections, Defendant objects to Judge Scoles's legal[2] conclusions that: (1) Defendant's vehicle was properly searched and (2) Defendant's statements were voluntary. *See* Objections at 10-22.

### A. *Search of Defendant's Vehicle*

Defendant argues that Judge Scoles erroneously found that the search of Defendant's vehicle was reasonable pursuant to the inventory search exception and the search incident to arrest exception. *See id.* at 19-21.

"'The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)) (internal quotation marks omitted).

#### 1. *Inventory search*

Defendant argues that Judge Scoles erred in finding that the inventory exception applies because the vehicle "was not a traffic hazard" and "[t]here was no need to protect the vehicle by towing it away . . . [because] [Defendant's wife] was available by phone to come and pick it up." Objections at 22.

One recognized exception to the general rule that warrantless searches are per se unreasonable "allows law enforcement to inventory the contents of a lawfully impounded vehicle without a warrant or probable cause." *Taylor*, 636 F.3d at 464. This exception is justified because it provides for "the protection of the owner's property while it remains

---

[2] In the Objections, Defendant devotes several pages to "Disputed Facts." Objections at 3-13. However, Defendant actually appears to be objecting to the legal conclusions drawn by such facts. To the extent Defendant objects to factual conclusions, the court will address such objections in its legal analysis.

5

in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) (citations omitted). However, "an inventory search must not be a ruse for a general rummaging . . . to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). A search conducted pursuant to the inventory exception complies with the Fourth Amendment even in the absence of a warrant or probable cause "so long as [it is] reasonable under the totality of the circumstances." *United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013). "'The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally remove the inference that the police have used inventory searches as a purposeful and general means of discovering evidence of a crime.'" *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir. 2013) (quoting *Taylor*, 636 F.3d at 464). Moreover, "[e]ven if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search." *Taylor*, 636 F.3d at 465. That is, if the government does not conduct an inventory search according to standardized procedures, for the search to run afoul of the inventory exception there must still be something more "to suggest that the police were engaging in their criminal investigatory function, not their caretaking function, in searching [a] defendant's vehicle." *Id*. The government has the burden to show "that its conduct complied with the inventory search exception." *Id*. at 464.

The court agrees with Judge Scoles that the government met its burden to show "that its conduct complied with the inventory search exception." *Id*. Defendant has provided no authority to support his argument that an officer may not perform an inventory search if a defendant's spouse is available to retrieve the vehicle. Moreover, the officers gave Defendant a phone with which to call his spouse, and Defendant appeared to leave a voice message. In addition, the court agrees with Judge Scoles that the officers

6

conducted the search "according to standardized police procedures." *Smith*, 715 F.3d at 1117. The vehicle was "under control of the person at the time of the arrest" and the officers performed the search "[t]o protect the vehicle from theft or further damage when the legal custodian is unavailable or incapable to give consent to such impoundment." Iowa State Patrol Procedures (docket no. 33-2) at 2.

### 2. *Search incident to arrest*

Defendant argues that Judge Scoles erred in finding that the search incident to arrest exception to the warrant requirement justified the search of Defendant's vehicle. In support of this argument, Defendant contends that "the search for the gun was . . . conducted as part of a general search of the vehicle intended to provide a basis to arrest him." Objections at 19. Defendant argues that the search preceded the arrest and, therefore, the search incident to arrest doctrine did not justify the search.

Another recognized exception to the general rule that warrantless searches are per se unreasonable permits police to search a vehicle incident to arrest. "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009). "[W]hen police act upon probable cause to arrest, the term 'seizure' is synonymous with the term 'arrest' under the Fourth Amendment." *United States v. Pratt*, 355 F.3d 1119, 1122-23 (8th Cir. 2004). "A person . . . is[] 'seized' by 'the slightest application of physical force' or when he [or she] submits to a 'show of authority.'" *Id.* at 1122 (quoting *California v. Hodari D.*, 499 U.S. 621, 625, 628-29 (1991)).

Here, officers clearly had probable cause to arrest Defendant for driving while impaired. Defendant appears to argue that he was not "arrested" until officers drove him to jail. However, Defendant was arrested when Deputy VanBennekom accompanied Defendant to the patrol car because Defendant submitted to Deputy VanBennekom's

7

authority. *See id.* It was reasonable for officers to believe that further evidence of the offense of the arrest—driving while impaired—would be found in Defendant's vehicle. Accordingly, the court agrees with Judge Scoles that officers were permitted to search Defendant's vehicles incident to arrest.

### B. Defendant's Statements

Defendant argues that Judge Scoles erroneously found that Defendant's statements to the jailer and to Deputy VanBennekom were voluntary. *See* Objections at 14-19.

#### 1. Statements to jailer

Defendant argues that his statements to the jailer were not voluntary because "the record is replete with evidence that [Defendant] was seriously mentally impaired . . . when he made statements to the [j]ailer." *Id.* at 14. Defendant argues that his statements were not voluntary pursuant to the Due Process Clause. *See id.* at 16 (discussing the Due Process Clause as the basis for Defendant's objection).

As the Eighth Circuit Court of Appeals explained in *United States v. Boslau*, the Due Process Clause is violated when a statement is involuntary.

> A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination. We discern whether a confession is voluntary under the totality of the circumstances, examining both the conduct of the officers and the characteristics of the accused. We consider, among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition. The mere fact that an officer may have elicited a confession through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices, does not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne.

8

> The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary.

*United States v. Boslau*, 632 F.3d 422, 428-29 (8th Cir. 2011) (internal citations and quotation marks omitted).

The court agrees with Judge Scoles that "there is no evidence [Defendant] was suffering from an 'impaired mental condition' or that such condition caused his 'will to be overborne.'" Report and Recommendation at 18. Defendant points to areas of the record he believes show that he was impaired during the arrest. *See* Objections at 3-5. However, Defendant submits no evidence to support his argument that he was impaired. In fact, as Judge Scoles points out, "[a] preliminary breath test (PBT) administered six hours earlier showed Defendant did not have any alcohol remaining in his system." Report and Recommendation at 18. Accordingly, Defendant's statements to the jailer were voluntary and the officers did not violate the Due Process Clause.

### 2. *Statements to Deputy VanBennekom*

Defendant argues that Judge Scoles erred in finding that officers did not violate the *Miranda* rule "because a reasonable person would consider the interrogation to be custodial and the *Miranda* warning was not effective." Objections at 17 (formatting omitted). The court agrees with Judge Scoles that Defendant was not in custody and, even if Defendant was in custody, Defendant validly waived his *Miranda* rights.

Whether a defendant is in custody for *Miranda* purposes is an objective inquiry, and courts "look[] to the totality of the circumstances confronting the defendant at the time of the interview, and ask[] 'whether a reasonable person in his position would consider his freedom of movement restricted to the degree associated with formal arrest.'" *United States v. Huether*, 673 F.3d 789, 794 (8th Cir. 2012) (quoting *United States v. Flores-Sandoval*, 474 F.3d 1142, 1146 (8th Cir. 2007)). The court looks to the following non-exclusive factors in determining whether a defendant is in custody:

> (1) whether the suspect was informed that he was free to leave and that answering was voluntary;
>
> (2) whether the suspect possessed freedom of movement;
>
> (3) whether the suspect initiated contact or voluntarily acquiesced;
>
> (4) whether strong arm tactics or strategies were employed;
>
> (5) whether the atmosphere was police dominated; or
>
> (6) whether the suspect was placed under arrest at the end of questioning.

*Id.* (quoting *United States v. Muhlenbruch*, 634 F.3d 987, 996 (8th Cir. 2011)).

Whether a defendant has voluntarily, knowingly and intelligently waived his or her *Miranda* rights

> has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)) (internal citations omitted).

Here, the court agrees with Judge Scoles that Defendant was not in custody. At the very beginning of the interview, Deputy VanBennekom told Defendant that he was not in custody, did not have to talk to Deputy VanBennekom and was free to leave if he wanted. Deputy VanBennekom reminded him again a few minutes later that Defendant was not in custody. Nothing about these circumstances support a conclusion that Defendant was in

10

custody. Further, the court agrees with Judge Scoles that Defendant validly waived his *Miranda* rights. To the extent that Defendant argues that the *Miranda* warnings were provided "mid-stream," the court agrees with Judge Scoles that the warnings were effective for the reasons more fully articulated in the Report and Recommendation. *See* Report and Recommendation at 15-16. Finally, to the extent Defendant argues that his statements to Deputy VanBennekom were involuntary under the Due Process Clause, the court finds that such statements were voluntary for the same reasons articulated above with respect to Defendant's statements to the jailer. Defendant points to the fact that Defendant appeared distressed, had his head in his hands, rocked back and forth and grimaced as evidence that Defendant was so impaired as to render his statements involuntary. *See* Objections at 7. The court agrees with Judge Scoles that Defendant's behavior does not support a conclusion that Defendant was so impaired as to render his statements involuntary. Accordingly, the court shall overrule Defendant's objections as to Defendant's statements to Deputy VanBennekom.

## VI. CONCLUSION

In light of the foregoing, the court **ORDERS**:

(1) The Objections (docket no. 43) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 41) is **ADOPTED**; and

(3) The Motion to Suppress (docket no. 26) is **DENIED**.

**DATED** this 26th day of January, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA